UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

DAVID L. SCHACHT,

    Plaintiff,                    Civil Action No. 15-10251
                                    Honorable Paul D. Borman
       v.                        Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [R. 20, 21]**

Plaintiff David L. Schacht appeals a final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record and a hearing on May 4, 2016, the Court finds that the administrative law judge's ("ALJ") decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [R. 20] be **GRANTED**;

- Schacht's motion [R. 21] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Schacht's Background and Disability Applications

Schacht was born on April 8, 1975, and he last worked in August 2009 as a chemical operator. [R. 11-2, Tr. 32-33]. The current application for DIB is the second that Schacht has filed.

#### 1. Prior Application

Schacht filed his first application for DIB in February 2010, alleging disability beginning in August 2009. [R. 11-3, Tr. 95]. After an administrative hearing, an ALJ denied the application in a written decision dated August 19, 2011, upon finding that Schacht: (a) had severe impairments of "glossopharyngeal neuralgia[1]; disorder of the neck and back; migraine headaches; and, depression"; (b) had the residual functional capacity ("RFC") to perform "light work … except [he] must avoid all exposure to hazardous machinery and unprotected heights … [and] he is limited to simple, routine, and repetitive tasks in a low stress work

---

[1] "Glossopharyngeal neuralgia is a condition in which there are repeated episodes of severe pain in the tongue, throat, ear, and tonsils, which can last from a few seconds to a few minutes." See https://www.nlm.nih.gov/medlineplus/ency/article/001636.htm

2

environment with only occasional decision making required and only occasional[] changes in the work setting but no strict production quotas"; and (c) was not disabled, as jobs existed in significant numbers in the economy that he could perform. [*Id.,* Tr. 97-101 (footnote added)]. The Appeals Council denied review, making the decision the final decision of the Commissioner, and Schacht did not file an appeal. [*Id.,* Tr. 106-08].

### 2. Current Application

Schacht filed a second application for DIB in April 2012, alleging disability due to glossopharyngeal neuralgia with an onset date of January 2012.[2] [R. 11-2, Tr. 13; R. 11-6, Tr. 206, 215-16]. After the application was denied initially, Schacht requested a hearing, which took place on August 8, 2013 before a different ALJ and included testimony by Schacht and a vocational expert ("VE"). [R. 11-2, Tr. 26-55]. In a September 25, 2013 written decision, the ALJ found Schacht to be not disabled. [*Id.,* Tr. 13-22]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Schacht timely filed for judicial review. [*Id.,* Tr. 1-3; R. 1].

---

[2] Schacht initially alleged a disability onset date of August 2009, but later amended it to January 2012. [*See* R. 11-2, Tr. 13].

3

**B.     The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[3] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education

---

[3] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Schacht was not disabled. At the first step, he found that Schacht had not engaged in substantial gainful activity since his alleged onset date. [R. 11-2, Tr. 15]. At the second step, he found that Schacht had the severe impairments of "glossopharyngeal neuralgia, a chronic pain syndrome, depression, and anxiety." [*Id.*, Tr. 16]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*]. In making this determination, the ALJ found that Schacht had a moderate restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence and pace. [*Id.*, Tr. 16-17].

After the third step, the ALJ found that Schacht had essentially the same RFC as assessed in the prior decision:

> to perform light work … except that he is restricted to simple, repetitive, unskilled work which would be at 'SVP' level one or

5

>   two as defined in the Dictionary of Occupational Titles, and
>   which would not have fast-paced production requirements or
>   few if any workplace changes, and only simple work-related
>   decisions, and he cannot be exposed to unprotected heights or
>   hazardous machinery.

[R. 11-2, Tr. 17-18 (emphasis in original)]. At step four, the ALJ found that Schacht could not perform past relevant work. [*Id.*, Tr. 20]. With the assistance of VE testimony [*see id.*, Tr. 50-51], the ALJ determined at step five that based on Schacht's age, education, work experience and RFC, he could perform the positions of inspector, packer, and small products assembler, of which significant jobs existed in the economy. [*Id.*, Tr. 21].

## II.  ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining

6

whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741

7

F.3d at 729.

Schacht argues that the ALJ erred in assessing his credibility, in assessing his RFC, and in concluding that he is capable of performing substantial gainful activity. The Commissioner argues that substantial evidence supports the ALJ's decision because there has not been a significant change in Schacht's condition or the severity of his impairments, such that the ALJ was required to adopt the ALJ's findings in the prior decision. The Court agrees with the Commissioner.

### A. The ALJ was bound by the Previously Assessed RFC

If a final decision of the Commissioner "on a prior disability claim contains a finding of a claimant's residual functional capacity, [the Commissioner] may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period … unless new and additional evidence or changed circumstances provide a basis for a different finding of the claimant's residual functional capacity." *See* Acquiescence Ruling 98-4(6), 1998 WL 283902, at *3 (June 1, 1998); *see also Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842-43 (6th Cir. 1997) (citations omitted) ("When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by th[at]

8

determination [when adjudicating a subsequent claim] absent changed circumstances."). Schacht has the burden of establishing that new and material evidence or changed circumstance warrants a different finding than the prior decision. *See Drummond*, 126 F.3d at 843.

Although Schacht cites to several medical records and the opinion of Veena Dua, M.D., his treating provider, to argue new and material evidence exists, he fails to show that there has been a material change in his condition since the prior decision, and thus substantial evidence supports the ALJ's decision to adopt the RFC from that decision.

Schacht first cites to a January 26, 2012 progress note in which Dr. Dua diagnosed him with three new conditions – insomnia, anxiety, and psoriasis – and noted that he is having difficulty sleeping. [R. 11-7, Tr. 296-97]. The Commissioner correctly argues that Schacht failed to show how these impairments require a more restrictive RFC, and that a diagnosis of an impairment by itself does not speak to the severity or functional impact of the condition. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [a condition], of course, says nothing about the severity of the condition."). Schacht must demonstrate that those new impairments significantly changed his limitations. *Merrill v. Comm'r of Soc. Sec.*, No.

9

2:14-CV-262, 2015 WL 571008, at *11 (S.D. Ohio Feb. 11, 2015), *report and recommendation adopted sub nom. Merrill v. Colvin*, No. 2:14-CV-262, 2015 WL 1637435 (S.D. Ohio Apr. 13, 2015). There is no evidence showing that any of Schacht's new diagnoses significantly changed his functional limitations from those assessed by the ALJ in the prior decision.

In fact, Schacht's sleep problem is not even a new issue; he testified during the hearing in the prior claim that he had "to take a lot of medication to get to bed" and that he had lost sleep because of his pain. [R. 11-2, Tr. 67-68]. Even if it was, the impact it has on Schacht's RFC is unclear. In a July 30, 2013 treating source letter regarding Schacht's impairments and limitations, Dr. Dua did not list insomnia as one his conditions. [R. 11-7, Tr. 305]. The diagnoses of these three conditions do not constitute new and material evidence.

Schacht also argues that a February 23, 2012 note in which his neurologist, Jose DeSousa, M.D., indicates that he "may have some disturbance on the pharyngeal nerve attached at the tongue blade on the back of the throat" [*Id.*, Tr. 253] is new and material evidence. But that statement of a possible impairment is inconclusive and does not suggest functional limitation in addition to those caused by his glossopharyngeal

neuralgia.

Next, Schacht contends that Dr. Dua's July 30, 2013 letter opinion constitutes new and material evidence not before the prior ALJ and that the current ALJ did not give that opinion sufficient weight. The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. If an ALJ gives less than controlling weight to a treating source's opinion, she must provide "good reasons" for doing so that are "supported by the evidence in the case record, and … sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

In the letter at issue, Dr. Dua opined that Schacht has had a "decline in his mental health … [and] an increase in his depression in 2012 and 2013"; that he "continues to describe constant pain varying in degree throughout the

day from 3/10 to 10/10"; that "3-4 days per week his pain is so severe [that] he is unable to get out of bed except to use the bathroom"; and that based on his conditions, he "would miss several days of work per week" and "could not work in any capacity." [R. 11-7, Tr. 305-06]. The Court does not agree that the ALJ was required to give this opinion greater weight.

The ALJ declined to give controlling weight to Dr. Dua's opinion that Schacht's depression had worsened because it is not supported by the record. [R. 11-2, Tr. 19-20]. As pointed out by the ALJ, Dr. Dua's progress notes from the three appointments immediately preceding the date she issued her opinion – dated October 2, 2012, January 24, 2013, and June 27, 2013 – indicate that Schacht's "mood has been good and overall [he is] doing well." [*Id.*, Tr. 19; R. 11-7, Tr. 299-300, 307-10]. The ALJ found that "[t]hose statements seem very inconsistent with Dr. Dua's statement that the depression has worsened … [and] seem inconsistent with Dr. Dua's conclusion that the claimant cannot do any work on a sustained basis." [R. 11-2, Tr. 19].

The AJL also cited the opinion of Hugh Bray, Ph.D., a consulting psychologist, as more evidence contradicting Dr. Dua's opinion regarding Schacht's mental status. [R. 11-2, Tr. 20]. Dr. Bray diagnosed Schacht with

12

"Adjustment Disorder with Depressed Mood" and "History of Concentration Issues"; he found Schacht's prognosis to be "Fair"; and he concluded that Schacht had a Global Assessment of Functioning ("GAF") score of 65.[4] [R. 11-7, Tr. 294]. With regard to work-related mental activities, Dr. Bray opined that Schacht's "ability to relate to others, including fellow workers and supervisors[,] is mildly impaired"; that his "ability to understand, remember and carry out tasks appears to be mildly impaired"; that he "was able to perform simple repetitive tasks … [and] likely … could handle more complex tasks"; that his "[d]ifficulty in performing multiple step tasks is likely to be minimal"; that his "ability to maintain attention, concentration, persistence, pace and effort is mildly impaired"; and his "ability to withstand stress and pressure associated with day to day work activities is moderately impaired." [*Id.*]. These findings are consistent with the prior ALJ's findings regarding Schacht's mental abilities [*see* R. 11-3, Tr. 98], and his current GAF score is higher than the GAF score in the prior claim, which was 55-60 [*id.*, Tr. 100]. This is substantial evidence supporting the ALJ's finding that, like in the prior action, Schacht is capable of performing simple, unskilled work.

---

[4] "GAF scores in the range of 61-70 are intended to indicate some mild symptoms or some difficulty in social, occupational, or school functioning." *Karger v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 739, 745 (6th Cir. 2011).

13

Contrary to Schacht's argument, the ALJ reasonably concluded that as a psychologist, Dr. Bray was more qualified to express an opinion as to his mental status than Dr. Dua, a primary care physician, was. [R. 11-2, Tr. 20]. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). This is true despite the fact that Dr. Dua is a treating physician, because – as discussed above – her own records contradicted her opinion, and Dr. Bray's opinion is more consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

For all of these reasons, the ALJ gave good reasons for discounting the weight given to Dr. Dua's opinion regarding the alleged decline in Schacht's mental health.

Dr. Dua's opinion regarding Schacht's pain levels and physical limitations does not support reversal of the ALJ's decision. First, Dr. Dua referred to the degree and limitations caused by Schacht's *continued* pain

14

levels; she did not indicate that his pain had worsened.[5] [R. 11-7, Tr. 305-06]. She stated that she had seen a decline in Schacht mental health, but she did not conclude the same about his physical health. [*Id.*]. This opinion is, therefore, not new evidence supporting a more restrictive physical RFC. *Drummond*, 126 F.3d at 842.

Furthermore, Dr. Dua's statement that Schacht would miss work several days per week is not a valid medical opinion. *See Kolar v. Comm'r of Soc. Sec.*, No. 1:14-cv-503, 2015 WL 5589265, at *6 (W.D. Mich. Sept. 4, 2015) (a doctor's "predictions of how often plaintiff would likely miss work [is] conjecture, not a medical opinion"). The ALJ also properly gave no weight to Dr. Dua's opinion that Schacht could not work in any capacity because a finding of disability is reserved for the Commissioner. *Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir.2008) ("[T]he ultimate issue of disability is reserved to the Commissioner.").

Based on the foregoing, Schacht did not sustain his burden of demonstrating that he suffers from new severe impairments that require a more restrictive RFC, and thus the ALJ was bound by the RFC assessment

---

[5] During the administrative hearing, Schacht's representative likewise described his depression, but not his chronic pain, as having worsened. "He's always had a very severe chronic pain problem, but his depression seems to have gotten worse in the last couple of years." [R. 11-2, Tr. 31].

from the prior decision. *See Drummond*, 126 F.3d at 842.

### B. The ALJ Did Not Err at Step Five

During the hearing, the ALJ posed multiple questions to the VE regarding a claimant's ability to work with varying RFCs and functional limitations. In one hypothetical, the ALJ asked whether any jobs exist for a claimant who is "off task 20 percent of the day in addition to regularly scheduled breaks," and the VE testified that such a limitation would be work preclusive. [R. 11-2, Tr. 51-52]. Schacht argues that the ALJ erred in failing to adopt that conclusion by the VE. This argument is without merit.

In finding that Schacht was capable of performing work that exists in significant numbers in the economy at step five, the ALJ relied on the VE's response to the first hypothetical question posed, which accurately summarized Schacht's assessed RFC. [*See id.*, Tr. 50]. As noted, the ALJ was bound by that RFC assessment absent changed circumstances. *Drummond*, 126 F. 3d at 842. Since substantial evidence supports the ALJ's determination that no new evidence warranted a more restrictive RFC, the ALJ was entitled to rely on the VE's response to the hypothetical question based upon the assessed RFC. *See Walton v. Comm'r of Soc. Sec.*, 60 Fed. Appx. 603, 611 (6th Cir. 2003); *Brewer v. Soc. Sec. Admin.*, 39 Fed.

Appx. 252, 254 (6th Cir. 2002).

### C. The ALJ's Credibility Determination

Schacht argues that the ALJ erred in assessing his credibility because he failed to discuss symptoms of his impairments and side effects that his medication caused, and he incorrectly found that he never took a medication prescribed and never contacted a neurosurgeon regarding surgery. Schacht's argument is unavailing because, as found above, the ALJ was bound by the prior final decision. As Schacht admitted during the hearing before this Court, this finding renders his credibility argument moot. *Kopacsi v. Comm'r of Soc. Sec.*, No. 12-14160, 2013 WL 5450133, at *5 (E.D. Mich. Sept. 30, 2013) (rejecting claimant's credibility argument because "the salient issue in this case is whether substantial evidence supports the ALJ's decision to adopt the findings of the previous ALJ based on his findings that there was no new evidence or changed circumstances . . . .").

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [R. 20] be **GRANTED**; that Schacht's motion [R. 21] be **DENIED**; and that the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

17

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: May 5, 2016

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 5, 2016.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
